UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

                       Plaintiff,

      v.                                        3:04-CR-495

WALTER C. PARKER,

                       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

**I.     INTRODUCTION**

On April 22, 2005, Defendant Walter Parker was convicted on Counts 1, 3, 5, 6, 7 and 8 of the Superceding Indictment. Counts 1, 3, 5, and 6 charged four separate bank robberies. The remaining counts were firearms charges. Presently before the Court is Defendant's motion seeking a judgment of acquittal pursuant to FED. R. CRIM. P. 29(c).

**II.    STANDARD OF REVIEW**

In reviewing a motion for a judgment of acquittal, the Court views the evidence in the light most favorable to the prosecution and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See United States v. Espaillet, 380 F.3d 713, 718 (2d Cir. 2004). A defendant challenging the sufficiency of the evidence "bears a heavy burden." United States v. Si Lu Tian, 339 F.3d 143, 150 (2d Cir. 2003) (internal quotation marks omitted). "[A] court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent

or so meager that no reasonable jury could find guilt beyond a reasonable doubt." United States v. Guadagna, 183 F.3d 122, 130 (2d Cir. 1999) (internal quotation marks omitted).

As the Second Circuit has explained:

> In applying these principles, it is the court's duty to "review all of the evidence presented at trial in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government." United States v. Walker, 191 F.3d 326, 333 (2d Cir. 1999) (internal quotation marks omitted).  It is irrelevant that the judge conducting such a review personally feels that he or she would not have found guilt upon such evidence.  The conviction must be sustained if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Guadagna, 183 F.3d at 130. "The government's case need not exclude every possible hypothesis of innocence . . . ." United States v. Martinez, 54 F.3d 1040, 1043 (2d Cir. 1995) (internal quotation marks omitted).  Thus, where "either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, [the court] must let the jury decide the matter." United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000) (internal quotation marks omitted; alteration in original).  Furthermore, "courts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal." United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003). It is settled that "Rule 29(c) does not provide the trial court with an opportunity to substitute its own determination of ... the weight of the evidence and the reasonable inferences to be drawn for that of the jury." Guadagna, 183 F.3d at 129 (internal quotation marks omitted; alteration in original).

### III. DISCUSSION

#### a. Motion for Judgment of Acquittal

Defendant moves for a judgment of acquittal on the ground that there was insufficient evidence that he took money from the Groton Bank by force or intimidation.  To satisfy this element of the offense, the government did not need to prove that anyone was actually intimidated.  See United States v. Wagstaff, 865 F.2d 626, 627-28 (4th Cir. 1989). Rather, the government need only prove that Defendant did or said something that would make an ordinary reasonable person fear bodily harm.  See United States v. Askari, 140

F.3d 536, 541, opinion vacated and superceded on other grounds, 159 F.3d 774 (3d Cir. 1998); United States v. Woodrup, 86 F.3d 359, 363 (4th Cir. 1996). It is not necessary for a defendant to make verbal threats or display, or threaten to use, a weapon. See United States v. Henson, 945 F.2d 430, 439-40 (1st Cir. 1991).

In Henson, the defendant stood within two feet of the teller and wrote a note directing her to "put fifties and twenties into an envelope now." Id. at 439. Although there was no evidence of the display of a weapon, no threat of bodily harm, no threatening gestures, and no acts of force or violence, the First Circuit held that "a rational juror reasonably could find that [the defendant's] emphatic written demand for the immediate surrender of the bank's money was enough to cause fear in an ordinary person." Id.

In United States v. Hopkins, 703 F.2d 1102 (9th Cir. 1983), the defendant entered a bank and handed the teller a note reading "[g]ive me all your hundreds, fifties and twenties. This is a robbery." Id. at 1103. The teller responded that she had no hundreds or fifties, to which the defendant replied "[o]kay, then give me what you've got." Id. The teller then "left the teller window, ostensibly to obtain money, and informed several bank employees that she was being robbed. After [the teller] entered the bank vault, [the defendant] left the bank in a nonchalant manner." Id. The Ninth Circuit held that this was sufficient evidence to support the conviction. The Ninth Circuit stated that "[a]lthough the evidence showed that [the defendant] spoke calmly, made no threats, and was clearly unarmed, we have previously held that express threats of bodily harm, threatening body motions, or the physical possibility of concealed weapons are not required for a conviction of bank robbery by intimidation. We believe that the threats implicit in [the] written and verbal demands for money provide sufficient evidence of intimidation to support the jury's verdict." Id.

A similar result was obtained in the unreported case of <u>United States v. Hickson</u>, 16 F.3d 412, 1994 WL 32775 (4th Cir. 1994), wherein the Fourth Circuit held that a verbal and written demand for money is sufficient to establish intimidation.  That court reasoned that the teller "was not simply a spectator to a theft. . . .  She had to decide whether to comply with his demand or refuse it."

In this case, two bank tellers were involved with Parker on the date of the Groton Bank robbery - Melissa Silbaugh and April Castellaneta.  Neither witness testified to Parker having displayed a weapon or made any threatening comments.  Silbaugh testified at trial as follows:

> I was working from the hours of 7:30 a.m. to 1 p.m. and I was having a conversation with a coworker at the time and I noticed a movement in front of my station, and directed my attention to the customer, and he asked if I had a pen.  At that point I handed him a pen, and he leaned behind the upright shelves that we have in front of our stations and he was scribbling something, I didn't see, but  he showed me a note and it said, "All your money," and I asked him, "Are you serious?"  And he said, "Yes, I want the money from your first and second drawer."  And I was just shocked, and I took my nameplate off of the shelf and turned it around and put it down in front of him and walked away.

Silbaugh Tr. at 4.  Silbaugh then went to the back of the bank where she cried.  <u>Id</u>. at 5.  Silbaugh's question "are you serious" does not necessarily mean that she believed Defendant to be joking, but, considering the totality of the circumstances, a jury could reasonably interpret this statement as evidence of her shock concerning the situation that she confronted.  Even if Silbaugh did not initially believe Defendant to be serious, once he responsed "yes, I want to the money from your first and second drawer," the gravity of the situation certainly escalated.  As Silbaugh's testimony makes clear, she became "shocked"

and the incident caused her to cry. From this, a jury could reasonably conclude that Parker's actions instilled fear in her.

> At trial, Castellaneta testified as follows:
>
> I was over at the drive-up and I walked past Station Number 5, which is Mrs. Silbaugh's station, and I went to Station Number 3, which is mine. I noticed she had a male customer at her station, and as I watched her, I noticed she put her sign down in front of the customer and turned around and walked out towards the back of the bank. And then her customer came over to my Station 3 and he demanded that I give him the money, all my money, and I asked him if he was serious because I thought he might be joking, I was surprised, and he said yes, and I started taking all the money from my second drawer first, trying to get him quickly out of there, which is the strapped money, and I put it on the counter, and he was shoving it into a bag that was over his side shoulder, and he was shoving all the money in there quickly, and when I got done with the bottom drawer, I started on the top drawer, and -- well, I asked him first if he wanted all that too because I thought maybe he would just take that and go, and he wanted all that too and he said yes. So I started giving him that and it was flying every which way, and after he had taken all the top drawer, he headed out towards the door and veered left, into the parking lot.

Castellaneta Tr. at 12.

Based on this testimony, it is clear that Defendant "demanded" money and that Castellaneta was "surprised." The testimony further indicates that the teller was doing all she could to get Defendant out of the bank as quickly as possible. It is reasonable for the jury to infer that the teller wanted Defendant out of the bank as quickly as possible because the situation was frightening. A jury could reasonably infer from this testimony that Parker actually instilled fear in Castellaneta. It should also be remembered that, when he did not successfully get money from Silbaugh, Defendant did not leave the bank, but instead went to Castellaneta and demanded money from her. That fact that Defendant was persisting in his pursuit of money also could reasonably be found to have elevated the level of fear in the

bank employees. Moreover, a jury could reasonably conclude that an ordinary bank teller who is suddenly presented with a written and/or verbal demand for money from a male individual wearing a baseball hat, sunglasses, gloves, a satchel, and two shirts in the middle of July would fear bodily harm. Considering the totality of the circumstances, the Court finds that there was sufficient evidence upon which a reasonable jury could conclude that Defendant took money by intimidation.

Defendant next moves for a judgment of acquittal on the ground that there was insufficient evidence that he was the person who actually robbed the banks in question. Specifically, Defendant contends that there was "wildly varying descriptive testimony including height ranging from 5'8" to 6'5", differently shaped and styled hats allegedly worn during the same robbery and, most importantly, no testimony whatsoever that the alleged robber limped." This argument, too, must be rejected. There was ample evidence from which a jury reasonably could conclude that Defendant committed the robberies in issue. This evidence includes physical descriptions from bank employees, photographs, video tapes, lineup identifications, and the circumstantial evidence presented, such as the items found in Defendant's vehicle and home.

### b. **Duplicitous Counts**

Although Defendant failed to move on this ground, the Court *sua sponte* finds that Defendant cannot be convicted of both Counts 7 and 8 without violating his rights under the Double Jeopardy clause because each charges a similar firearms crime with respect to the same underlying predicate offense - the bank robbery alleged in Count 6. In United States v. Lindsay, 985 F.2d 666, 674 (2d Cir. 1993), the Second Circuit held, "[w]here the government links multiple firearms to a single crime, only one § 924(c)(1) violation occurs." By analogy

the same result should be had where the "possession" of a firearm count (Count 8) and the "use and carrying" of a firearm count (Count 7) are linked to a single crime (Count 6). The Court will afford defense counsel and the government eleven days from the date of this Order to submit a brief addressing which of these counts should be vacated based on any differences in sentencing on the counts. See Lindsay, 985 F.2d at 676 (requiring vacatur of the count with the less severe sentence). If neither the government nor defense counsel take a position on this issue, then the Court will vacate Count 7.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion for a judgment of acquittal is DENIED. The Court will *sua sponte* vacate either Count Seven or Count Eight after counsel are afforded an opportunity to address which of those two counts should be vacated.

IT IS SO ORDERED.

Dated: May 25, 2005

Thomas J. McAvoy
Senior, U.S. District Judge